**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF IOWA**
**WESTERN DIVISION**

| | |
|---|---|
| PAMELA K. H.,<br><br>Plaintiff,<br><br>vs.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>Defendant. | No. 25-cv-4023-LTS<br><br>**REPORT AND RECOMMENDATION** |

---

Pamela K. H. ("Claimant") seeks judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") in denying her application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. Sections 401-34. For the reasons that follow, I recommend that the Commissioner's decision be **affirmed**.

## *I. BACKGROUND*

Claimant was born in 1982. (AR[1] at 264.) She is a high school graduate and attended one year of college. (*Id*. at 269.) Claimant allegedly became disabled due to chronic pain, fibromyalgia, depression, interstitial cystitis, and anxiety. (*Id*. at 268.) Claimant's onset of disability date is April 5, 2021. (*Id*. at 264.) On October 20, 2022, Claimant protectively filed his application for DIB. (*Id*. at 14, 220.) Her claim was denied originally on January 10, 2023 (*id*. at 14, 92-101) and was denied on reconsideration on March 31, 2023. (*Id*. at 14, 102-111.) A hearing was held on January

[1] "AR" cites refer to pages in the Administrative Record.

24, 2024, with Claimant and her attorney Ronald Wagenaar appearing by online video before Administrative Law Judge ("ALJ") Jessica Hodgson. (*Id.* at 32-68.) Vocational Expert ("VE") Guy Hostetler also appeared at the hearing. (*Id.*) Claimant and the VE both testified at the hearing. The ALJ issued an unfavorable decision on April 3, 2024. (*Id.* at 14-26.)

Claimant requested review and the Appeals Council denied review on March 26, 2025. (*Id.* at 1-3.) Accordingly, the ALJ's decision stands as the final administrative ruling in the matter and became the final decision of the Commissioner. *See* 20 C.F.R. § 404.981.

On May 20, 2025, Claimant timely filed her Complaint in this Court. (Doc. 4.) On September 23, 2025, all briefing was completed, and the Honorable Leonard T. Strand, United States District Court Judge, referred the case to me for a Report and Recommendation.

## *II. DISABILITY DETERMINATIONS AND THE BURDEN OF PROOF*

A disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). A claimant has a disability when, due to physical or mental impairments, the claimant:

> is not only unable to do [the claimant's] previous work but cannot, considering [the claimant's] age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A). A claimant is not disabled if the claimant is able to do work that exists in the national economy but is unemployed due to an inability to find work,

lack of options in the local area, technological changes in a particular industry, economic downturns, employer hiring practices, or other factors. 20 C.F.R. § 404.1566(c).

To determine whether a claimant has a disability, the Commissioner follows a five-step sequential evaluation process. *Swink v. Saul*, 931 F.3d 765, 769 (8th Cir. 2019). At steps one through four, the claimant has the burden to prove he or she is disabled; at step five, the burden shifts to the Commissioner to prove there are jobs available in the national economy. *Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (quotation omitted).

At step one, the ALJ will consider whether a claimant is engaged in "substantial gainful activity." *Id.* If so, the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(i). "Substantial activity is significant physical or mental work that is done on a full- or part-time basis. Gainful activity is simply work that is done for compensation." *Dukes v. Barnhart*, 436 F.3d 923, 927 (8th Cir. 2006) (citing *Comstock v. Chater*, 91 F.3d 1143, 1145 (8th Cir. 1996); 20 C.F.R. § 404.1572(a)-(b)).

If the claimant is not engaged in substantial gainful activity, at step two, the ALJ decides if the claimant's impairments are severe. 20 C.F.R. § 404.1520(a)(4)(ii). If the impairments are not severe, then the claimant is not disabled. *Id.* An impairment is not severe if it does not significantly limit a claimant's "physical or mental ability to do basic work activities." *Id.* § 404.1520(c). The ability to do basic work activities means the ability and aptitude necessary to perform most jobs. *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987); *see also* 20 C.F.R. § 404.1521(b). These include:

> (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to

> supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting.

*Id.* (quotation omitted) (numbers added; internal brackets omitted).

If the claimant has a severe impairment, at step three, the ALJ will determine the medical severity of the impairment. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment meets or equals one of the impairments listed in the regulations ("the listings"), then "the claimant is presumptively disabled without regard to age, education, and work experience." *Tate v. Apfel*, 167 F.3d 1191, 1196 (8th Cir. 1999) (quotation omitted).

If the claimant's impairment is severe, but it does not meet or equal an impairment in the listings, at step four, the ALJ will assess the claimant's residual functional capacity ("RFC") and the demands of the claimant's past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). RFC is the most an individual can do despite the combined effect of all his or her credible limitations. *Id.* § 404.1545(a); *Toland v. Colvin*, 761 F.3d 931, 935 (8th Cir. 2014). RFC is based on all relevant evidence and the claimant is responsible for providing the evidence the Commissioner will use to determine RFC. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). "Past relevant work" is any work the claimant performed within the fifteen years prior to this application that was substantial gainful activity and lasted long enough for the claimant to learn how to do it. 20 C.F.R. § 404.1560(b)(1). If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv).

At step five, if the claimant's RFC will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show that there is other work the claimant can do, given the claimant's RFC, age, education, and work experience. *Id.* §§ 404.1520(a)(4)(v), 404.1560(c)(2). The ALJ must show not only that the claimant's RFC will allow the claimant to do other work, but also that other work

exists in significant numbers in the national economy. *Eichelberger*, 390 F.3d at 591 (citation omitted).

### *A. The ALJ's Findings*

The ALJ made the following findings regarding Claimant's disability status at each step of the five-step process. Initially, the ALJ determined that Claimant met the insured status requirements through December 31, 2026. (AR at 16.) The ALJ then applied the first step of the analysis and determined that Claimant had engaged in substantial gainful activity since April 5, 2021, the alleged onset date. (*Id.*) At the second step, the ALJ concluded from the medical evidence that Claimant suffered from the following severe impairments: chronic pain syndrome, fibromyalgia, obesity, a cervical spine disorder, moderate major depressive disorder, generalized anxiety disorder, PTSD, and adjustment disorder with mixed anxiety and depressed mood. (*Id.*) At the third step, the ALJ found that Claimant did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (*Id.* at 17.) The ALJ evaluated Claimant's claims under listing 1.15 (disorders of the spine), 1.18 (abnormality of joint in any extremity), 12.04 (depressive disorders), 12.06 (anxiety disorders), and 12.15 (trauma and stress-related disorders). (*Id.* 17-18.) The ALJ also evaluated Claimant's obesity in accordance with SSR 19-2p and Listings 1.00Q, 3.00O, 4.00I, and 9.00. (*Id.* at 17.) Further, the ALJ determined that Claimant did not satisfy either the "paragraph B" or "paragraph C" criteria. (*Id.* at 18-19.) At the fourth step, the ALJ determined that Claimant had the following RFC:

> [C]laimant has the residual functional capacity to perform sedentary work as defined in 20 CFR [§] 404.1567(a) except she can lift and/or carry 10 pounds occasionally and less than 10 pounds frequently; sit for up to six hours in an eight-hour workday, however, she must have the option to alternate to standing for three minutes after every 30 minutes of sitting; and stand and/or walk for up to two hours in an eight-hour workday, however, she must have the option to alternate to sitting for five minutes after every

> 30 minutes of standing and/or walking. She can occasionally climb ramps and stairs, but she can never climb ladders, ropes, or scaffolds. She can occasionally balance, stoop, kneel, crouch and crawl. She must never work at unprotected heights or around moving mechanical parts. She can occasionally operate a motor vehicle and work in vibration. She is able to perform simple, routine tasks, and she can perform simple work-related decisions. She can frequently interact with supervisors, coworkers, and the public.

(*Id.* at 19.) Also at the fourth step, the ALJ determined that Claimant was unable to perform her past relevant work. (*Id.* at 29.) At step five, the ALJ found that there were jobs that existed in significant numbers in the national economy Claimant could perform, including food and beverage order clerk, gauger, and final assembler. (*Id.* at 25-26.) Thus, the ALJ concluded that Claimant was not disabled. (*Id.* at 26.)

### B. *The Substantial Evidence Standard*

The ALJ's decision must be affirmed "if it is supported by substantial evidence in the record as a whole." *Grindley v. Kijakazi*, 9 F.4th 622, 627 (8th Cir. 2021) (quoting *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996)). "The phrase 'substantial evidence' is a 'term of art' used throughout administrative law. . . . [T]he threshold for such evidentiary sufficiency is not high. . . . It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal citations and quotations omitted); *see also Kraus v. Saul*, 988 F.3d 1019, 1024 (8th Cir. 2021) ("Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept it as adequate to support a conclusion.") (Quoting *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012)). Thus, a court cannot disturb an ALJ's decision unless it falls outside this available "zone of choice" within which the ALJ can decide the case. *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006) (citation omitted). "An ALJ's decision is 'not outside the zone of choice' simply because [the c]ourt 'might have reached a different conclusion had [it]

been the initial finder of fact.'" *Kraus*, 988 F.3d at 1024 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)).

In determining whether the Commissioner's decision meets this standard, the court considers all the evidence in the record, but does not reweigh the evidence. *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). A court considers "both evidence that detracts from the Commissioner's decision, as well as evidence that supports it." *Fentress v. Berryhill*, 854 F.3d 1016, 1020 (8th Cir. 2017). The court must "search the record for evidence contradicting the [ALJ's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial." *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)). However, "even if inconsistent conclusions may be drawn from the evidence, the [Commissioner's] decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *see also Igo v. Colvin*, 839 F.3d 724, 728 (8th Cir. 2016) (providing that a court "may not reverse simply because [it] would have reached a different conclusion than the [Commissioner] or because substantial evidence supports a contrary conclusion").

## *III. DISCUSSION*

### *A. Parties' Arguments*

Claimant argues that the ALJ's decision "should be reversed because it is not supported by substantial evidence in the record as a whole." (Doc. 9 at 24.) Specifically, Claimant argues that the ALJ "does not cite to any opinions from medical providers that support the RFC." (*Id.* at 29.) Claimant asserts that the ALJ "does not cite to any specific findings, testing results or medical evidence that show [Claimant] retains the RFC she found and/or that [Claimant] can function at that level on a day in day out basis eight hours a day, five days a week." (*Id.*) Claimant also argues that the ALJ did not

properly consider the opinions of Dr. Lichty, a treating physician, Dr. Skrenes, Claimant's chiropractor, and Jason Chester, Claimant's primary mental health therapist. (*Id.* at 30-31, 33.) Claimant also points out that the ALJ did not address her physical therapist Teresa Sampson's findings from therapy sessions. (*Id.* at 31-32.) Claimant concludes that:

> In the end the ALJ cited to no records that contradict the opinions of Dr. Lichty, Dr. Skrenes, Jason Chester or Physical Therapist Sampson. Instead she chose to ignore or reinterpret the medical record to support her denial of benefits. Her interpretation is contrary to the interpretations and opinions of those who actually created the record, who gave opinions based on the information they wrote in the records, who observed and examined [Claimant] over several years' time. The ALJ's findings are not supported by the record as a whole and must be rejected.

(*Id.* at 34.) Claimant also suggests that the ALJ failed to properly assess her credibility as it relates to her RFC. (*Id.* at 36-38.) Claimant concludes that the "ALJ failed to properly evaluate [Claimant's] impairments, failed to properly evaluate her subjective impairments and made an unsupported RFC. (*Id.* at 38.)

The Commissioner argues that "substantial evidence supports the ALJ's very restrictive RFC finding." (Doc. 11 at 3.) The Commissioner points out that, in her decision, the ALJ thoroughly reviewed Claimant's medical history in determining Claimant's RFC. (*Id.* at 4-5.) The Commissioner also argues that, in determining Claimant's RFC, the ALJ complied with the regulations in assessing the opinions of Dr. Lichty, Dr. Skrenes, and Mr. Chester. (*Id.* at 7-11.) As for Ms. Sampson, Claimant's physical therapist, the Commissioner notes that Ms. Sampson did not provide a medical opinion and the ALJ referenced Claimant's physical therapy sessions and cited physical therapy records in her decision. (*Id.* at 11.) The Commissioner concludes that Claimant's "arguments amount to a request that the Court reweigh the evidence in her favor"; however, "the Court does not reweigh the evidence presented to the ALJ" and

"[b]ecause substantial evidence supports the ALJ's very restrictive RFC finding . . . the ALJ's decision was within the zone of choice and the Court should affirm it." (*Id.* at 12.)

### *B. Pertinent Medical Evidence*

#### *1. Dr. Lichty*

On September 19, 2022, Claimant had a follow-up visit with her treating physician, Dr. Lichty. Both Claimant and the Commissioner consider Dr. Lichty's opinion a treating source statement. *See* AR at 405-406. Claimant was diagnosed with fibromyalgia, chronic pain syndrome, mild episode of recurrent major depression, and generalized anxiety disorder. (*Id.* at 406.) Dr. Lichty noted that Claimant was "alert, well appearing, and in no distress, normal appearing weight, acyanotic, and in no respiratory distress. (*Id.*) Claimant was also "alert, oriented to person, place, time, [and her] affect [was] appropriate to mood." (*Id.*) Neurologically, Claimant's motor and sensory examination was "grossly normal bilaterally." (*Id.*) Claimant was treated with medication. (*Id.*) Dr. Lichty opined that Claimant should be "restricted [to] sitting less than an hour, restricted [to] standing 10 minutes. Unable to focus on screens more than half hour. Able to lay for couple hours at a time. Can sleep in bed 4 to 5 hours at a time then needs to be up and moving for short periods of time. Pain is chronic and consistent." (*Id.*)

On May 3, 2023, Dr. Lichty provided a letter regarding Claimant:

> I have been taking care of [Claimant] since 2017. She does carry diagnosis of fibromyalgia. It does continue to worsen even with aggressive treatment including oral medications and behavioral health therapy. She has tried different work stations as well as different occupations. She continues to not be able to perform those duties because of her fibromyalgia and chronic pain issues. I have referred her to multiple specialists and continues to have issues. She will continue to have issues and flares in pain with her

> fibromyalgia and chronic pain issues. She will likely not be able to be employed because of these issues.

(*Id.* at 775.)

***2. Dr. Skrenes***

On April 19, 2023, Dr. Skrenes provided a letter regarding Claimant. Dr. Skrenes noted that Claimant had been a patient since August 2017. (AR at 779.) Dr. Skrenes also noted that Claimant had been "evaluated by vocational rehabilitation and given no reasonable work offers to allow a safe return to the workplace." (*Id.*) Dr. Skrenes opined that Claimant had "seen some positive changes with care overall but pain and limitations in her daily routine and work duties persist." (*Id.*) Further, Dr. Skrenes opined that "[i]t has been a consistent finding in her evaluations from the last number of months that [Claimant] struggles to maintain relief from chronic pain and fatigue" and there have been "some short term gains with chiropractic care but she still struggles with ongoing symptoms that significantly limit her daily routine and ability to work." (*Id.*) Dr. Skrenes concluded that "[w]e cannot at this time give an accurate reflection of her future status to where her work limitations would be at this time but feel that [Claimant] would benefit from disability services." (*Id.*)

***3. Jason Chester, MSW, LISW***

On April 26, 2023, Jason Chester, Claimant's mental health therapist provided a letter regarding Claimant. (AR at 708.) Mr. Chester noted that he started working with Claimant in April 2019 for Claimant's difficulties coping with trauma from her childhood. (Id.) Claimant also sought help with how her fibromyalgia diagnosis affected her "emotionally as well as physically in her day-to-day interactions." (*Id.*) Claimant's diagnoses include major depression and generalize anxiety disorder. (*Id.*) Mr. Chester noted that Claimant's difficulties with fibromyalgia caused her to resign from her job, creating financial strain. Claimant also moved from a house into an apartment. Mr.

Chester also noted that Claimant attempted a different job but had to resign due to fatigue and other physical symptomology. (*Id.*) Mr. Chester opined that "[p]ychologically, this was taking a toll on [Claimant] due to the fact that she was placing self-blame upon herself for not being able to provide for herself or to keep the first and only home that she has ever been able to own." (*Id.*) Mr. Chester concluded that:

> In conclusion, unless [Claimant's] fibromyalgia symptoms are able to improve, her psychological status most likely will continue to stay somewhat the same. Continued depression and anxiety would be expected. This in itself, would make it difficult to maintain concentration, focus as well as motivation that would be necessary to maintain full-time employment.

(*Id.*)

### ***C. Relevant Law***

The ALJ is responsible for assessing a claimant's RFC, and his or her assessment must be based on all of the relevant evidence. *Guilliams*, 393 F.3d at 803. Relevant evidence for determining a claimant's RFC includes "medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations." *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004)). While an ALJ must consider all of the relevant evidence when determining a claimant's RFC, "the RFC is ultimately a medical question that must find at least some support in the medical evidence of record." *Casey v. Astrue*, 503 F.3d 687, 697 (8th Cir. 2007).

The ALJ also has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007). "There is no bright line rule indicating when the [ALJ] has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008).

Under the rules articulated in 20 C.F.R. Section 404.1520c, when determining the persuasiveness of a medical opinion, no such opinion is automatically given controlling weight. 20 C.F.R. § 404.1520c(a). Opinions from medical sources are evaluated using the following factors: (1) supportability, (2) consistency, (3) provider's relationship with the claimant, (4) specialization, and (5) other factors. *Id.* § 404.1520c(c). Supportability and consistency are the most important factors when determining "how persuasive the ALJ find[s] a medical source's medical opinions . . . to be." Id. § 404.1520c(b)(2). The ALJ "may, but [is] not required to, explain how [he or she] considered the factors in paragraphs (c)(3) through (c)(5). . . ." *Id.*

Supportability concerns the internal consistency that a source's opinion has with the source's own findings and notes. "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . ., the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). Consistency concerns the external consistency that the source's opinion has with the findings and opinions of other sources. "The more consistent a medical opinion[] . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion[] . . . will be." 20 C.F.R. § 404.1520c(c)(2).

Additionally, when assessing a claimant's credibility, "the ALJ must consider all of the evidence, including objective medical evidence, the claimant's work history, and evidence relating to the factors set forth in *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984)." *Vance v. Berryhill*, 860 F.3d 1114, 1120 (8th Cir. 2017). In *Polaski*, the Eighth Circuit stated that:

> The [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration,

> frequency, and intensity of pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of medication; [and] (5) functional restrictions.

739 F.2d at 1322; *see also* SSR 16-3P (S.S.A.), 2017 WL 5180304, at *7-8 (outlining factors nearly identical to the factors found in *Polaski* for evaluating the intensity, persistence, and limiting effects of an individual's symptoms). An ALJ is not required to methodically discuss each *Polaski* factor as long as the ALJ "acknowledge[es] and examin[es] those considerations before discounting [a claimant's] subjective complaints." *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) (citing *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996)). The ALJ, however, may not disregard "a claimant's subjective complaints solely because the objective medical evidence does not fully support them." *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012) (quoting *Wiese v. Astrue*, 552 F.3d 728, 733 (8th Cir. 2009)).

Instead, an ALJ may discount a claimant's subjective complaints "if there are inconsistencies in the record as a whole." *Wildman v. Astrue*, 596 F.3d 959, 968 (8th Cir. 2010). Where an ALJ seriously considers, but for good reason explicitly discredits a claimant's subjective complaints, the court will not disturb the ALJ's credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001); *see also Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (providing that deference is given to an ALJ when the ALJ explicitly discredits a claimant's testimony and gives good reasons for doing so). "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Igo*, 839 F.3d at 731 (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1218 (8th Cir. 2001)).

### *D. Analysis*

The ALJ found Dr. Lichty's opinions unpersuasive and explained that:

> The September 2022 opinion from treating physician Scott Lichty, M.D. is not persuasive. Dr. Lichty indicated that the claimant can sit for less than

an hour, stand for 10 minutes, but is unable to focus on screens for more than a half hour. Dr. Lichty also indicated that the claimant can lay for a couple hours at a time, and she can sleep in bed for four to five hours at a time, but then needs to be up and moving for short periods of time. He noted that she experiences constant and chronic pain. (See Ex. B2F/20). Aside from the reference to chronic pain, Dr. Lichty did not provide rationale explaining his proposed limitations, at least some of which are not vocationally-relevant. Moreover, his opinion is not supported by his treatment records, which reveal largely unremarkable physical and mental status examination findings. Moreover, this opinion is not entirely consistent with the overall medical evidence, which establishes a greater capacity for exertional and nonexertional movements and/or activities.

> I also considered the May 2023 statement from Dr. Lichty that described the claimant's treatment for fibromyalgia, the nature of the condition, her primary symptoms, and the statements that she continues to have issues due to the condition, and his conclusion that she is likely not able to be employed because of her fibromyalgia. (Ex. B11F). As a threshold matter, statements regarding whether a person is disabled encroach on the responsibilities of the Commissioner of Social Security; as such, these statements are neither inherently valuable nor persuasive. The reminder of the opinion does not identify specific work-related capabilities or limitations; regardless of whether this portion of the opinion is supported by or consistent with the medical evidence of record, it is not persuasive due to the lack of vocationally relevant terminology and inclusion of equivocal terms such as "likely."

(AR at 23.) The ALJ also addressed Dr. Skenes's opinions:

> I find the April 2023 statement from the claimant's chiropractor, Ryan Skrenes, D.C. to be unpersuasive. Dr. Skrenes described his treating relationship with the claimant and the treatment he has provided. He noted that the claimant continues to experience chronic pain and fatigue, and he indicated that her symptoms significantly limit her daily routine and ability to work. Although he noted it is difficult for him to predict the claimant's long-term limitations, he indicated that he felt that she would benefit from disability services. (See Ex. B12F). Portions of this statement appear to encroach on the responsibilities of the Commissioner, and as Dr. Skrenes did not offer specific work-related limitations or capabilities, the opinion is

> quite vague. While Dr. Skrenes' treatment notes support the proposition that the claimant received chiropractic treatment, this opinion, to the extent it suggests the claimant is "disabled" under the Social Security Act, is not consistent with the overall medical evidence which demonstrates the claimant remains capable of performing unskilled sedentary work.

(*Id.* at 23-24.) Finally, the ALJ addressed Mr. Chester's opinions:

> The April 2023 statement from Jason Chester, MSW, LISW, the claimant's psychotherapist, is not persuasive. (Ex. B8F). Mr. Chester described the claimant's mental health diagnoses, and he recounted a number of the claimant's subjective complaints. He indicated that the claimant had to resign from a prior position due to fatigue and other physical complaints. He suggested that the claimant's fibromyalgia symptoms negatively affects her mental health, and he indicated that continued depression and anxiety are to be expected unless her fibromyalgia symptoms improve. He then indicated that she would have difficulty maintaining concentration, focus, and motivation necessary to maintain full-time employment. Similar to the statements described in the preceding paragraphs, Mr. Chester's statement encroaches on the responsibilities of the Commissioner of Social Security. Additionally, much of this statement deals with medical issues that are outside the scope of Mr. Chester's medical specialty. Further, he does not describe the extent to which concentration, focus, and motivation are impaired. While the psychotherapy notes of record provide some support for Mr. Chester's statements, the overall medical evidence reveals largely unremarkable mental status examination findings, outside of some abnormalities in mood and affect; as such, to the extent that this opinion can be interpreted as a statement that the claimant is disabled under the Social Security Act due to her mental impairments, it is not consistent with the medical evidence.

(*Id.* at 24.) With regard to Claimant's mental health symptoms, the ALJ also determined that:

> Treatment records generally reveal intact memory and cognition. (See, e.g., Ex. B2F/39, 56, 65, 77, 91, 109; B5F/7; B6F/6, 16; B10F/8, 15, 27, 31; B17F/9, 28, 45, 79, 100, 126, 183, 212, 252; and B18F/4). The claimant was frequently described as cooperative, pleasant, and/or friendly, and she generally maintained appropriate eye contact during examinations.

> (See, e.g., Ex. B2F/39, 77, 98; B6F/6, 16; B10F/15, 27; B17F/9, 28, 52; and B19F/9, 21, 29). While the claimant often presented with mood and affect abnormalities such as: withdrawn demeanor, depressed and/or anxious mood, and flat or blunted affect, she consistently denied current suicidal ideation. (See, e.g., Ex. B2F/39, 76; B5F/7; B6F/6; B10F/16; B17F/52, 71, 103, 184, 212, 252; and B19F/9, 21). Although the nature of the claimant's mental and physical impairments would reasonably cause some difficulty concentrating and/or paying attention, when formally assessed, her attention and concentration were typically rated as intact or normal. (See, e.g., Ex. B2F/39, 56, 65, 85, 98; B5F/7; and B18F/5). She presented as alert and oriented, although there are occasional findings of slowed or ruminative thought processes in the treatment records. (See, e.g.,. Ex. B2F/39, 56, 85; B6F/13; and B10F/9, 16, 22, 31; B17F/183). However, the claimant typically presented with normal or appropriate psychomotor activity. (See, e.g., Ex. B2F/37, 152; B6F/6, 16; B17F/144, 169, 183, 200, 212, 224, 244, 275; and B19F/6, 21, 29). Her judgment and insight were variable, but typically ranged from fair to good/intact throughout the relevant period. (See, e.g., Ex. B2F/39, 56, 85; B5F/7; B6F/13; B10F/9, 31; B17F/10, 31, 44, 55, 79, 118, 165, 212, 264; B18F/5; and B19F/9). Although the claimant's mental impairments broadly affect her mental functioning, the evidence demonstrates the claimant's mental limitations are not markedly or extremely limiting. . . .
>
> Additionally, treatment for mental impairments was generally conservative in nature, consisting of oral medication and therapy during the period at issue. Additionally, the claimant reported she can perform activities such as: grocery shopping, handling a checking or savings account, prepare simple meals, and drive a car. (See Ex. B6E and B5F). In performing these activities, the claimant has demonstrated she is capable of making more than a marginal adjustment to the above-described circumstances.

(*Id.* at 18-19.) Similarly, with regard to Claimant's physical impairments, the ALJ determined:

> Overall, treatment for physical pain was largely conservative in nature during the relevant period, consisting of physical therapy and medications such as Lyrica, Savella, medical cannabis, antidepressants such as Cymbalta, opioids such as Percocet, and muscle relaxers such as Zanaflex or Flexeril. (See, e.g., Ex. B2F/14, 31, 58, 76; B17F/188, 238; B18F/2;

> and B19F/33). While the claimant's symptoms of fibromyalgia, chronic pain disorder, cervicalgia, and other medically determinable impairments, along with potential medication side effects broadly affect her work-related functioning, the evidence indicates that the claimant remains capable of performing the modest range of sedentary work described in the residual functional capacity, which contains a sit/stand option and a range of postural and environmental limitations, on a regular and continuing basis.

(*Id.* at 22.)

Based on the foregoing, I find that the ALJ both properly considered Dr. Lichty's opinions, Dr. Skenes's opinions, and Mr. Chester's opinions and properly addressed the consistency and supportability of Dr. Lichty's opinions, Dr. Skenes's opinions, and Mr. Chester's opinions. The ALJ also properly supported her conclusions that Dr. Lichty's opinions, Dr. Skenes's opinions, and Mr. Chester's opinions were not consistent with the record as a whole and were not adequately supported by objective medical findings in the record. Even if different conclusions could be drawn on this issue, the conclusions of the ALJ should be upheld because they are supported by substantial evidence on the record as a whole. *See Guilliams*, 393 F.3d at 801. It is not for this Court to reweigh evidence. Accordingly, I conclude that the ALJ properly evaluated Dr. Lichty's opinions, Dr. Skenes's opinions, and Mr. Chester's opinions.

As for Ms. Sampson, the Commissioner correctly points out that Ms. Sampson did not offer a medical opinion, the record simply contains Ms. Sampson's treatment notes. *See* 20 C.F.R. § 404.1513(a)(2) ("A medical opinion is a statement from a medical source about what you can still do despite your impairment(s)[.]"). Further, in her decision, the ALJ noted that Claimant attended physical therapy as treatment for her physical pain. (AR at 22.) "[A]n ALJ is not required to discuss every piece of evidence submitted." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (alteration in original) (quoting *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998)); *see also Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir.2000) ("Although required to develop the record fully and fairly,

an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered.").

Turning to the ALJ's credibility determination, the ALJ determined that:

> The claimant alleged disability due to chronic pain, fibromyalgia, depression, interstitial cystitis, and anxiety. (Ex. B3E). She indicated that her impairments make it difficult for her to lift, squat, bend, stand, reach, walk, sit, kneel, talk, hear, climb stairs, remember, complete tasks, concentrate, understand, follow instructions, and use her hands. (Ex. B6E). She indicated she cannot lift items above chest level, and she is unable to reach or perform postural movements for more than a few seconds without worsening her pain. She noted she can stand for about 15 minutes, walk for 10 minutes, and sit about 30 minutes. She stated she can hardly climb stairs, and she noted trouble gripping items. She indicated she can walk up to 500 feet without stopping to rest, and she reported that she often cannot leave her home due to anxiety. She noted she can pay attention for about 20 minutes at a time. She reported issues in following both written and spoken instructions, and she described reduced tolerance for social activities because of pain and her mental symptoms. (Id.).
>
> In describing her symptoms, the claimant reported widespread pain of variable intensity. She noted her pain levels fluctuate throughout the day, but tends to center around her neck, shoulders, lower back, and hips. She described burning, shooting, stabbing pain, ranging from moderate to severe intensity. She endorsed constant pain, which worsens with any activity. She noted her pain limits her ability to perform any physical activity, and requires her to rest more often than she would like. She also noted issues with thinking and concentrating, such as jumbling words in her head, forgetfulness, and trouble focusing on a concentration for more than a few minutes. She also endorsed medication side effects of drowsiness and fogginess, and she reported limited relief from modalities such as using an electric blanket or taking hot baths. (See Ex. B7E).
>
> At the hearing, the claimant testified that her medications make her drowsy such that she has difficulty concentrating. She indicated that friends from church help her with her daily activities. She noted that her pain causes cognitive issues, and she indicated that her medications provide little relief from her pain and other symptoms. She stated that she must change

positions frequently due to her pain, and she indicated that she uses a wheelchair to aid in mobility, due to her back pain. She stated she can sit for about 20 minutes, stand for 10 to 15 minutes, and walk about 100 feet before changing positions or stopping to rest. She also noted using a walker or motorized cart when grocery shopping, and she described great difficulty in climbing stairs and using her hands. She indicated she drops items, has limited capacity for gripping, and experiences hand pain. She noted that she can prepare simple meals, and she does her own laundry, although it takes her several days to do it. She reported she can lift about 10 pounds with both hands, and she stated she receives assistance with grocery shopping and other activities from friends and family. (Hearing Recording).

After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

After reviewing the evidence of record, I find the claimant's statements about the intensity, persistence, and limiting effects of her symptoms are only partially consistent with the evidence currently of record. While the evidence describes a history of treatment for widespread body pain and tenderness, diagnosed as cervicalgia, fibromyalgia, and/or chronic pain disorder, the clinical findings and other objective evidence does not completely support the severity of the limitations endorsed by the claimant. Treatment records establish widespread, diffuse tenderness that is a hallmark of fibromyalgia. (See, e.g., Ex. B1F/4; B17F/110; and B18F/4). Although the record does not strictly satisfy either of the diagnostic criteria set forth in Social Security Ruling 12-2p for establishing fibromyalgia as a medically determinable impairment, as the claimant has been treated for this condition throughout the period at issue, and the objective evidence substantially complies with SSR 12-2p, I have evaluated fibromyalgia as a severe medically determinable impairment. I note, however, that acceptable medical sources indicated that the claimant retained normal range of motion, normal or steady gait, and normal motor and sensory functioning throughout the period at issue. (See, e.g., Ex. B1F/4; B2F/39; B10F/25, 34; B17F/21, 64, 112, 153, 221, 257; B18F/4-5; and B19F/18).

> Moreover, treating sources indicated that the claimant appeared to be in no acute distress, and she exhibited no involuntary movements. (See, e.g., Ex. B1F/4; B2F/39, 56; B17F/190; and B18F/4-5).

(AR at 20-21.) In addition to the ALJ's explanation that the overall medical evidence does not support Claimant's subjective allegations, the ALJ also addressed: (1) Claimant's daily activities (AR at 19); (2) Claimant's pain (*id.* at 21-22); and (3) Claimant's use of medication as treatment (*id.* at 22). The ALJ also considered third-party statements from Claimant's friends and pastor. (*Id.* at 22-23.) The ALJ noted that the third-party statements were consistent with Claimant's own statements regarding her functional abilities but found that "these sources did not describe, with specificity, the claimant's work-related capabilities or limitations, and a friend responded with "don't know" for a number of prompts." (*Id.* at 23.) Further, the ALJ stated that, "[a]lthough I am willing to concede that these third parties are familiar with the claimant's longitudinal functioning, their statements are not consistent with the objective evidence of record, as described in more detail above, which indicates the claimant can perform sedentary unskilled work, on a regular and continuing basis." (*Id.*) Finally, the ALJ noted that "[t]reatment records indicate that the claimant was seeking employment at times during the period at issue, and she apparently participated in vocational rehabilitation. (See, e.g., Ex. B2F/54-55; B6F/12; and B15F)." (AR at 22.) *See Dunahoo v. Apfel,* 241 F.3d 1033, 1039 (8th Cir. 2001) ("Seeking work . . . while applying for benefits, . . . [is] inconsistent with complaints of disabling pain.").

Based on the foregoing, it is clear from the ALJ's decision that she considered and addressed the *Polaski* factors in determining that Claimant's subjective allegations of disability and the testimony of her witnesses were not fully credible. *See Johnson*, 240 F.3d at 1148; *see also Goff*, 421 F.3d at 791 (an ALJ is not required to explicitly discuss each *Polaski* factor, it is sufficient if the ALJ acknowledges and considers those factors

before discounting a claimant's subjective complaints); *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir.2004) ("The ALJ is not required to discuss each *Polaski* factor as long as the analytical framework is recognized and considered. *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir.1996)."). Accordingly, because the ALJ seriously considered, but for good reasons explicitly discredited Claimant's subjective complaints, I find that the ALJ's credibility determination should not be disturbed. *See Johnson*, 240 F.3d at 1148.

In determining Claimant's RFC, the ALJ addressed and considered Claimant's medical history and treatment for his complaints. (AR at 21-25.) The ALJ also properly considered and discussed Claimant's subjective allegations of disability in making her overall disability determination, including determining Claimant's RFC, finding that "claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]" (*Id.* at 21.)

Therefore, having reviewed the entire record, I find that the ALJ properly considered Claimant's medical records, observations of treating physicians, and Claimant's own description of her limitations in making the ALJ's RFC assessment for Claimant. *See Lacroix*, 465 F.3d at 887. Further, I find that the ALJ's decision is based on a fully and fairly developed record. *See Cox*, 495 F.3d at 618. Because the ALJ considered the medical evidence as a whole, I conclude that the ALJ made a proper RFC determination based on a fully and fairly developed record. *See Guilliams*, 393 F.3d at 803.

Accordingly, based on the foregoing, I recommend that the District Court affirm the ALJ's decision.

## ***IV. CONCLUSION***

For the foregoing reasons, I respectfully recommend that the District Court **AFFIRM** the decision of the ALJ.

The parties must file objections to this Report and Recommendation within fourteen (14) days of the service of a copy of this Report and Recommendation, in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). Objections must specify the parts of the Report and Recommendation to which objections are made, as well as the parts of the record forming the basis for the objections. *See* Fed. R. Civ. P. 72. Failure to object to the Report and Recommendation waives the right to de novo review by the District Court of any portion of the Report and Recommendation as well as the right to appeal from the findings of fact contained therein. *United States v. Wise*, 588 F.3d 531, 537 n.5 (8th Cir. 2009).

**DONE AND ENTERED** this 17th day of September, 2026.

Mark A. Roberts, United States Magistrate Judge
Northern District of Iowa